UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
_____

DAYS INNS WORLDWIDE, INC.,
a Delaware Corporation,                                **COMPLAINT**

                        Plaintiff,

v.                                                     Civil No.: 14-cv-1255

SUPER DAY MORTON, LLC,
an Illinois Limited Liability Company,
and HARISH PATEL, an individual,

                        Defendants.
_____

      Plaintiff Days Inns Worldwide, Inc., a Delaware Corporation, by and through its attorneys, Goldberg Segalla LLP, as and for its Complaint against Defendants, Super Day Morton, LLC, an Illinois limited liability company, and Harish Patel alleges as follows:

### PARTIES, JURISDICTION AND VENUE

      1.    Plaintiff Days Inns Worldwide, Inc., ("DIW") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

      2.    Defendant, Super Day Morton, LLC ("SDM"), is a limited liability company organized and existing under the laws of the State of Illinois with its principal place of business at 150 W. Ashland Avenue, Morton, Illinois 61550.

      3.    Defendant Harish Patel ("Patel") is the managing member and 100% owner of SDM and is a citizen of the State of Illinois residing at 1804 Woodbine Road, Bloomington, Illinois 61704.

4.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as Plaintiff and Defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

5.  This Court has personal jurisdiction over SDM by virtue of, among other things, paragraph 3 of the September 20, 2001 Addendum to the License Agreement Pursuant to the Illinois Franchise Disclosure Act (the "IL Addendum") which amends section 17.6.3 of the September 20, 2001 License Agreement by and between SDM and DIW (the "License Agreement"), described in more detail below, so that SDM has consented that "..all litigation by or between [SDM] and [DIW], arising directly or indirectly from the franchise relationship, shall be commenced and maintained, at [DIW's] election, in the state courts of Illinois or the United States District Court for Illinois…"

6.  This Court has personal jurisdiction over Patel by virtue of, among other things, the terms of guaranty (the "Guaranty"), described in more detail below, pursuant to which Patel acknowledged that he was personally bound by section 17 of the License Agreement, and as amended by the IL Addendum.

7.  Venue is proper in this District pursuant to section 17.6.3 of the License Agreement, as amended by the IL Addendum, inasmuch as that provision contains an express waiver by SDM of any objection to venue in this District.

**ALLEGATIONS COMMON TO ALL COUNTS**

<u>The Agreements Between The Parties</u>

8.  On or about September 20, 2001, DIW entered into the License Agreement with SDM for the operation of a 60-room guest lodging facility located at 150 W. Ashland Avenue,

Morton, Illinois 61550, designated as Days Inns® Unit No. 04519-95934-02 (the "Facility"). A true and correct copy of the License Agreement is attached as Exhibit A.

9. Pursuant to section 5 of the License Agreement, SDM was obligated to operate a Days Inns® guest lodging facility for a fifteen (15) year term.

10. Pursuant to section 7, section 18.1 and Schedule C of the License Agreement, SDM was required to make certain periodic payments to DIW for royalties, service assessments, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees").

11. Pursuant to section 7.3 of the License Agreement, SDM agreed that interest is payable "on any past due amount payable to [DIW] under this [License] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law on, whichever is less, accruing from the due date until the amount is paid."

12. Pursuant to section 3.8 of the License Agreement, SDM was required to prepare and submit monthly reports to DIW disclosing, among other things, the amount of gross room revenue earned by SDM at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to DIW.

13. Pursuant to section 3.8 of the License Agreement, SDM agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.8 and 4.8 of the License Agreement, SDM agreed to allow DIW to examine, audit, and make copies of the entries in these books, records, and accounts.

14. Pursuant to section 11.2 of the License Agreement, DIW could terminate the License Agreement, with notice to SDM, if SDM (a) discontinued operating the Facility as a

Days Inns® guest lodging establishment or (b) lost possession or the right to possession of the Facility.

15. Pursuant to section 12.1 of the License Agreement, SDM agreed that, in the event of a termination of the License Agreement pursuant to section 11.2, it would pay liquidated damages to DIW in accordance with a formula specified in the License Agreement.

16. Pursuant to section 17.4 of the License Agreement, SDM agreed that the non-prevailing party would "pay all costs and expenses, including attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement."

17. Effective as of the date of the License Agreement, Patel provided DIW with a Guaranty of SDM's obligations under the License Agreement (the "Guaranty"). A copy of the Guaranty is attached as Exhibit B.

18. Pursuant to the terms of the Guaranty, Patel agreed, among other things, that upon a default under the License Agreement, he would "immediately make each payment and perform or cause [SDM] to perform, each unpaid or unperformed obligation of [SDM] under the [License] Agreement."

19. Pursuant to the terms of the Guaranty, Patel agreed to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or the License Agreement.

## The Defendants' Default and Termination

20. On or about May 31, 2012, SDM unilaterally terminated the License Agreement by ceasing to operate the Facility as a Days Inn® guest lodging facility.

21.     By letter dated June 29, 2012, a true and correct copy of which is attached hereto as Exhibit C, DIW acknowledged SDM's unilateral termination of the License Agreement, effective May 31, 2012, and advised SDM that it was required to pay to DIW as liquidated damages for premature termination the sum of $120,000.00 as required under the License Agreement, and all outstanding Recurring Fees through the date of termination.

## FIRST COUNT
### (Accounting)

22.     DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 21 of the Complaint.

23.     Pursuant to sections 3.8 and 4.8 of the License Agreement, SDM agreed to allow DIW to examine, audit, and make copies of SDM's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

24.     The calculation of the monetary amounts sought by DIW in this action is based on the gross room revenue information supplied to DIW by SDM and, to the extent there has been non-reporting, DIW's estimate as to the gross room revenue earned by SDM.

25.     The accuracy of this information cannot be confirmed without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from SDM.

## SECOND COUNT
### (Liquidated Damages)

26.     DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 25 of the Complaint.

27. On or about May 31, 2012, SDM unilaterally terminated the License Agreement by ceasing to operate the Facility as a Days Inn® guest lodging facility.

28. Section 12.1 of the License Agreement provides that, in the event of termination of the License Agreement due to action of SDM, SDM shall pay liquidated damages to DIW within 30 days of termination.

29. As a result of the termination of the License Agreement, SDM is obligated to pay DIW liquidated damages in the amount of $120,000.00, as calculated pursuant to section 12.1 of the License Agreement.

30. Notwithstanding DIW's demand for payment, SDM has failed to pay DIW the liquidated damages as required in section 12.1 of the License Agreement.

31. DIW has been damaged by SDM's failure to pay liquidated damages.

## THIRD COUNT
### (Breach of Contract)

32. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 31 of the Complaint.

33. By virtue of the premature termination of the License Agreement, DIW sustained a loss of future revenue over the remainder of the fifteen (15) year term of the License Agreement.

34. If the Court determines that SDM is not liable to pay DIW liquidated damages as required by section 12.1 of the License Agreement then, in the alternative, SDM is liable to DIW for actual damages for the premature termination of the License Agreement.

35. DIW has been damaged by SDM's breach of its obligation to operate a Days Inn® guest lodging facility for the remaining term of the License Agreement.

## FOURTH COUNT
## (Breach of Contract)

36. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 35 of the Complaint.

37. Pursuant to section 7, section 18.1, and Schedule C of the License Agreement, SDM was obligated to remit Recurring Fees to DIW.

38. Despite its obligation to do so, SDM failed to remit certain of the Recurring Fees due and owing under the License Agreement in the current amount of $113,523.71.

39. SDM's failure to remit the agreed Recurring Fees constitutes a breach of the License Agreement and has damaged DIW.

## FIFTH COUNT
## (Unjust Enrichment)

40. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 39 of the Complaint.

41. At the time of the termination of the License Agreement, SDM was obligated to pay DIW Recurring Fees.

42. Despite its obligation to do so, SDM failed to pay certain of the Recurring Fees due and owing under the License Agreement in the current amount of $113,523.71.

43. SDM's failure to compensate DIW constitutes unjust enrichment and has damaged DIW.

## SIXTH COUNT
## (Breach of Contract)

44. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 43 of the Complaint.

45. Pursuant to the terms of the Guaranty, Patel agreed, among other things, that upon a default under the License Agreement, he would immediately make each payment and perform each obligation required of SDM under the License Agreement.

46. Despite his obligation to do so, Patel has failed to make any payments or perform or cause SDM to perform each obligation required under the License Agreement.

47. Pursuant to the Guaranty, Patel is liable to DIW for SDM's liquidated damages in the amount of $120,000.00, or actual damages in an amount to be determined at trial, as well as SDM's Recurring Fees due and owing under the License Agreement in the current amount of $113,523.71.

**WHEREFORE**, DIW demands judgment:

    A.    on the First Count ordering that Super Day Morton, LLC account to DIW for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility;

    B.    on the Second Count against Super Day Morton, LLC for liquidated damages in the amount of $120,000.00, , together with interest, attorneys' fees, and costs;

    C.    on the Third Count against Super Day Morton, LLC for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs;

    D.    on the Fourth Count against Super Day Morton, LLC for Recurring Fees due and owing under the License Agreement, in the current amount of $113,523.71, together with interest, attorneys' fees, and costs;

E.   on the Fifth Count against Super Day Morton, LLC for Recurring Fees due and owing under the License Agreement, in the current amount of $113,523.71, together with interest, attorneys' fees, and costs;

F.   on the Sixth Count against Harish Patel for damages in the amount of all liquidated damages or actual damages and Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees, and costs; and

G.   for such other, further and different relief as to this Court seems just and proper.

Dated: Buffalo, New York
       June 26, 2014

                      GOLDBERG SEGALLA LLP

                      s/ Joseph M. Hanna
                      Joseph M. Hanna (IL Bar No. 6308424)
                      *Attorneys for Plaintiff*
                      665 Main Street, Suite 400
                      Buffalo, New York  14203
                      Telephone: 716-566-5400
                      jhanna@goldbergsegalla.com